*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re Burke*, Minors.

UNPUBLISHED
November 16, 2023

No. 365395
Wayne Circuit Court
Family Division
LC No. 2015-519130-NA

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor children, CRB and MSB. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent-mother is the biological mother of CRB and MSB, as well as four older children (KOW, NLB, DDB, and PLB). In 2017, respondent-mother's parental rights to KOW and NLB were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j), because of serious and chronic neglect, ongoing mental health concerns, and her failure to comply with her court-ordered treatment plan.[1] In 2020, respondent-mother also pleaded guilty to fourth-degree child abuse, MCL 750.136b(8), after leaving DDB and PLB unsupervised in her car for about five hours in 30 to 40 degree weather. In 2021, respondent-mother's parental rights to DDB and PLB were terminated under MCL 712A.19b(3)(c)(*i*), (i), and (j) because of serious and chronic neglect, substantial mental health issues, her refusal to obtain necessary treatment and services, and prior terminations.

CRB and MSB were born in 2021. In December 2021, petitioner filed a petition to terminate respondent-mother's parental rights to CRB and MSB under MCL 712A.19b(3)(a)(*i*), (g), (i), and (j), claiming that it was contrary to the welfare of CRB and MSB to remain with

---

[1] We affirmed termination of respondent-mother's parental rights in her consolidated appeals in Docket Nos. 341391 and 341734. *In re Burke/Crosby Minors*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2018 (Docket Nos. 341391 and 341734).

respondent-mother because of her history of prior terminations and current mental illness. Respondent-mother had received several psychiatric evaluations in the past and was diagnosed with bipolar depression, schizoaffective disorder, and psychosis. Respondent-mother was previously offered several services to rectify the issues that had led to the previous termination proceedings, including psychiatric evaluations, parenting classes, mental health medication, and individual therapy. However, respondent-mother had failed to complete or benefit from most of these services.

An adjudication trial and initial dispositional hearing was held in May 2022. Although the trial court authorized the petition and found that there were statutory grounds to terminate respondent-mother's parental rights under MCL 712A.19b(3)(g), (i), and (j), the trial court found that termination was not in the best interests of CRB and MSB because respondent-mother was "in a different position" than she had been during prior terminations and had demonstrated insight into her mental health issues. Petitioner requested that respondent-mother be court-ordered to attend all court hearings, medical appointments, and weekly supervised visits, as well as undergo individual counseling, participate in parenting classes, maintain suitable housing and a legal source of income, participate in a psychological and psychiatric evaluation, and participate in random drug and alcohol screenings. In response, respondent-mother argued that psychiatric and psychological evaluations and drug screens were unnecessary because she was actively treating her mental illness with a psychiatrist, she had recently had a psychological evaluation, and there was no indication that she was using drugs. Respondent-mother did not otherwise object to the requested services or request any specific services. The trial court granted petitioner's request, ordered a treatment plan based on petitioner's request, and ordered that reasonable efforts should be made to reunify the family and return the children to respondent-mother's care.

At a dispositional review in September 2022, petitioner informed the trial court that respondent-mother was not in compliance with her treatment plan, noting that respondent had missed 11 out of 13 scheduled parenting-time visits, had failed to complete nine out of ten drug screens, did not attend the children's medical appointments, had not seen the children at all in two months, had been terminated from individual counseling, supportive visitation, and parenting classes, did not have suitable housing, and had failed to provide proof of employment. Respondent-mother was arrested and hospitalized in June 2022 after a physical altercation with the children's putative father, and had not been taking her medication since May 2022.

In November 2022, petitioner filed a second petition requesting that the trial court terminate respondent-mother's parental rights to CRB and MSB under MCL 712A.19b(3)(a)(*i*), (a)(*ii*), (c)(*i*), (c)(*ii*), (g), (i), and (j). The petition alleged that respondent-mother had failed to complete parenting classes, supportive visitation, mental health treatment, individual therapy, had failed to submit to drug screens, did not attend several scheduled visits and had not visited with the children since July 2022, had failed to obtain suitable housing, and had not provided any financial or material support for the children since their birth. The petition also alleged that respondent-mother had failed to rectify the conditions that had led to the termination of her parental rights to her other children, and that her current whereabouts were unknown. The petition stated that respondent-mother received numerous and repeated referrals to various services to aid her in the completion of her court-ordered treatment, but that respondent-mother nevertheless had failed to engage with most of these services.

During the termination hearing held in February 2023, respondent-mother's foster care worker, Lyda McRoberts, testified that the only elements of her treatment plan that respondent-mother had completed were obtaining a psychiatric and psychological evaluation. McRoberts testified that she made over 20 referrals for supportive visitation, parenting classes, individual therapy, housing, and drug screens on respondent-mother's behalf. Respondent-mother failed to complete these services and admitted to McRoberts that she was not engaging in any mental health or therapeutic services. McRoberts stated that respondent-mother had not seen the children in-person in over eight months, and opined that they were not bonded to her and had bonded with their foster parent instead. McRoberts acknowledged that all of the drug screens respondent-mother had completed were negative. McRoberts also reviewed the Best Interest Clinic evaluation report, which indicated that respondent-mother had received unspecified special education services in high school.

Respondent-mother testified and confirmed that she was not currently undergoing any mental health treatment or taking medication because of negative side effects. Respondent-mother stated she failed to complete parenting classes and supportive visitation because she had been periodically homeless, had issues with transportation, and needed more time to complete services. Respondent-mother testified that she was receiving Social Security Disability (SSD) income because of her mental illness. Respondent-mother stated that she would be willing to re-engage in any necessary services to work toward reunification with CRB and MSB, and if given additional time, she would be able to fully re-engage and complete her required services.

After witness testimony, petitioner argued that respondent-mother's parental rights should be terminated, noting that respondent-mother had failed to complete mental health treatment, take her medication, follow through on referrals, and regularly visit with her children. Additionally, because respondent-mother did not have a bond with her children, could not provide them with stability and permanency, failed to complete services, and the children were placed in a stable preadoptive home, petitioner requested that the trial court find that termination was in CRB's and MSB's best interests. Respondent-mother's counsel argued that although "the conditions regarding when the kids came into care and the previous case are still the same," respondent-mother was not given a specialized service plan to accommodate her mental health issues and possible cognitive issues. Further, because respondent-mother had indicated that she was now willing to take her medication and could be stable enough to complete her required services within a reasonable time, respondent-mother claimed that termination was not in the best interests of the children.

The trial court found that there were statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (i), and (j) based on respondent-mother's failure to engage in her court-ordered services, lack of "insight into her psychiatric needs," and the trial court's belief that respondent-mother would not be able to address her needs in the near future. The trial court found that termination was in the children's best interests because respondent-mother did not have a bond with the children and could not provide them with stability and permanency. This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues that the trial court erred by holding that statutory grounds for termination of her parental rights were proven, because petitioner had failed to provide

accommodations for her disability and the trial court failed to appreciate that she was committed to regaining custody of her children.[2] We disagree.

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one of the enumerated statutory grounds has been established. MCL 712A.19b(3). We review for clear error a trial court's finding "that a ground for termination has been proven by clear and convincing evidence. . . ." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (quotation marks and citations omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014) (citation omitted).

"[W]hen a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). However, a respondent also has a responsibility to participate in and benefit from the services offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). We review for clear error a trial court's determination that reasonable efforts have been made. *Fried*, 266 Mich App at 542-543. Because respondent-mother failed to timely object to the service plan when it was ordered, see *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000), our review is limited to plain error affecting substantial rights, see *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

"Under Michigan's Probate Code, [petitioner] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown Minors*, 500 Mich 79, 85; 893 NW2d 637 (2017). The service plan must outline "the steps that both [petitioner] and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. If petitioner is aware that the parent suffers from a disability, it has an affirmative duty to incorporate "reasonable accommodations" that are "tailored to [the] disability" into its service plan and services. *Id*. at 87-90. However, the parent still has the responsibility to participate in and demonstrate benefit from those services. *In re Atchley*, 341 Mich App 332, 339; 990 NW2d 685 (2022). A parent's failure to participate in, comply with, and benefit from a service plan is evidence the parent will not be able to provide the child with proper care and custody and that the child will be harmed if returned to the parent's care. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018). To prevail on an argument that reunification efforts were inadequate, a respondent must establish that he or she would have fared better if other services had been offered. See *In re Fried*, 266 Mich App at 543. This includes

---

[2] Respondent-mother does not challenge the trial court's specific findings regarding the elements of each statutory ground for termination, but only argues generally that the trial court erred because of the lack of appropriate accommodation from petitioner and the trial court's failure to recognize her commitment to reuniting with her children.

identifying the services petitioner should have provided to accommodate the parent's specific needs. See *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021).

In this case, respondent-mother was diagnosed with bipolar depression, schizoaffective disorder, psychosis, and deliria, and received SSD income based on her mental illness. Because respondent-mother was disabled, and petitioner was aware of her mental illness, she was entitled to reasonable accommodations tailored to her disability in her service plan. See *In re Hicks/Brown Minors*, 500 Mich at 87-90. And indeed, the record shows that petitioner repeatedly attempted to provide services to respondent based on her mental health needs, including supportive visitation, individual therapy, and mental health treatment specifically to address her specialized needs and diagnoses. However, respondent-mother repeatedly failed to engage with and benefit from these services or follow through with additional referrals. While respondent-mother claims that petitioner failed to accommodate her disability, she fails to explain how the services provided were inadequate or how she would have fared better if other services were offered. See *Fried*, 266 Mich App at 543. Nor does respondent-mother identify what alternative services petitioner should have provided to accommodate her disability and her specific needs. See *Sanborn*, 337 Mich App at 266. Instead, respondent-mother suggests that petitioner should have known that she required further accommodations because it had to make multiple referrals for services. Because respondent-mother fails to show how further services would have assisted her, she has not shown error entitling her to relief.

Additionally, respondent-mother claims that petitioner should have known that she was cognitively impaired because the Best Interest Clinic evaluation stated that she had received special education in high school. However, except for the indication in the Best Interest Clinic evaluation, prepared in early 2022, that respondent-mother had received special education services in school, there is no evidence that respondent-mother suffered from a cognitive impairment. That evaluation did not assert that respondent-mother *currently* suffered from any sort of cognitive limitation, and at no point did respondent-mother request or indicate that she needed accommodations for a cognitive impairment. In fact, the first time respondent-mother mentioned a potential cognitive impairment was during the termination hearing. Because petitioner only has a duty to accommodate disabilities it is *aware* of, *Hicks/Brown*, 500 Mich at 87-90, and there is no proof that petitioner was made aware of a cognitive impairment requiring accommodations, respondent-mother was not improperly denied accommodations.

Additionally, respondent-mother claims that the trial court failed to consider that she was committed to regaining custody of her children. We find no clear error in this regard. Regardless of respondent-mother's subjective level of commitment, the record shows that despite numerous and repeated referrals from petitioner, respondent-mother missed the children's medical appointments, was terminated from individual therapy, parenting classes, and supportive visitation, completed only eight of 42 required drug screens, attended only 14 of 54 visits with the children, had not seen the children in-person in over eight months, and had not been taking her medication since May 2022. While the trial court considered respondent-mother's commitment to completing services, based on this evidence, it found that respondent-mother was unlikely to complete services in a reasonable amount of time. Because the record shows respondent-mother had a lengthy history of failing to participate in, comply with, and benefit from her service plans, this constitutes sufficient evidence to show she would not be able to provide the children with

proper care and custody and that the children would be harmed if returned to her care.  See *In re Kaczkowski*, 325 Mich App at 77.

## III.  BEST INTERESTS

Respondent-mother also argues the trial court erred by finding that termination was in the best interests of her children.  We disagree.

Termination of parental rights requires findings of statutory grounds for termination and that termination is in a child's best interests.  *Olive/Metts*, 297 Mich App at 40.  Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence.  *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).  "We review a trial court's findings of fact in termination proceedings, including whether termination of parental rights is in a child's best interest, for clear error.  *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).  A trial court's findings of fact are clearly erroneous if a reviewing court is "definitely and firmly convinced that it made a mistake."  *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018).

In determining whether termination is in a child's best interests:

> [T]he focus at the best-interest stage has always been on the child, not the parent.  In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it.  Courts may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.  Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan.  [*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks and citations omitted).]

"The trial court may also consider a parent's history of domestic violence, . . . the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption."  *White*, 303 Mich App at 714.  When more than one child is involved, a trial court must consider each child's best interests separately.  *Olive/Metts*, 297 Mich App at 42.  A trial court need not, however, make "individual" and "redundant factual findings" if the children's interests do not differ significantly.  *White*, 303 Mich App at 715-716.

As discussed, the record shows that respondent-mother failed to comply with her service plan because she missed the children's medical appointments, was terminated from individual therapy, parenting classes, and supportive visitation, completed eight of 42 required drug screens, attended 14 of 54 visits with the children, and had not been taking her medication since May 2022.  During the termination hearing, McRoberts testified that the children had never lived with respondent-mother, and because respondent-mother had not seen the children in-person in over eight months, they were not bonded to her and had bonded with their foster parent instead.  McRoberts also stated that during the visits respondent-mother *did* attend, she struggled to divide her attention between CRB and MSB, and was not receptive to redirection.  Additionally, respondent-mother did not have stable employment, housing, or transportation.

The record supports the trial court's finding that termination was in the best interests of the children based on respondent-mother's failure to comply with her service plan, the length of time the children had been removed from her care, their lack of a bond with respondent-mother, and her inability to provide the children with permanency and stability. *Payne/Pumphrey/Fortson*, 311 Mich App at 63-64. The trial court did not clearly err by finding termination was in the best interests of CRB and MSB.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado